UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

PRIORITY SEND

<u>CIVIL MINUTES -- GENERAL</u>

| | |
|---|---|
| Case No. **CV 04-902-JFW (SSx)** | Date: February 12, 2004 |

Title: IKON OFFICE SOLUTIONS, INC. -v- RAY A. MORGAN COMPANY d/b/a MORE OFFICE SOLUTIONS, INC., et al.

---

**DOCKET ENTRY**

---

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| K. Leigh Ray<br>Courtroom Deputy | None Present<br>Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS:<br>None | ATTORNEYS PRESENT FOR DEFENDANTS:<br>None |
|---|---|

PROCEEDINGS (IN CHAMBERS): ORDER DENYING *EX PARTE* APPLICATION OF PLAINTIFF FOR TEMPORARY RESTRAINING ORDER [filed 2/10/04];

ORDER ISSUING ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [filed 2/10/04].



On February 10, 2004, Plaintiff IKON Office Solutions ("Plaintiff") filed an *ex parte* Application for the issuance of a Temporary Restraining Order and an Order to Show Cause re Preliminary Injunction. On February 11, 2004, Defendants Ray Morgan Company, David Arneson, Nathan Smith, David Scott, Brad Burke, Curt Sykes, Mark Serio and Jonathan Weingarten (collectively "Defendants") filed their Opposition.[1] After considering the Application and Opposition, and the arguments therein, the Court rules as follows:

To obtain a temporary restraining order, Plaintiff has the burden of demonstrating either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [its] favor."

---

[1] Defendant Reginald Waters did not file an Opposition. Because Plaintiff was unable to confirm that Defendant Waters received notice of Plaintiff's *ex parte* Application, Plaintiff concedes that Defendant Waters should be excluded from the Court's consideration of Plaintiff's *ex parte* Application and request for the issuance of an Order to Show Cause re Preliminary Injunction. *See* Supp. Decl. of T. Loder at *passim*.

Page 1 of 3                                             Initials of Deputy Clerk  klr

*Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) quoting *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). "These standards 'are not separate tests but the outer reaches of a single continuum.'" *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001) quoting *International Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir. 1993); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."). "Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987).

Plaintiff's request for a temporary restraining order is premised on its allegations that the individual Defendants "destroyed and/or removed [Plaintiff's] confidential and trade secret records and customer list information"[2] and its belief that the individual Defendants are now using those records and that information to target and solicit Plaintiff's customers and otherwise divert customers from Plaintiff to Defendant Ray Morgan Company. Application at 11; *see also, e.g.*, Verified Complaint at ¶ 33; 41. In support of its allegations, Plaintiff offers the declarations of a number of employees who are still employed by Plaintiff, however, those declarations fail to establish that Defendants removed and/or are using any of Plaintiff's confidential customer information.

---

[2] The Court is particularly troubled by Plaintiff's assertion that it has been "handicapped" by the alleged destruction of current customer information and Plaintiff's implication in its papers that Plaintiff has been unable to communicate or otherwise transact business with existing customers - an implication which is directly contradicted by the evidence submitted by Defendants. Specifically, Plaintiff alleges that "[t]he removal and/or destruction of customer account and sales records for [Plaintiff's] customers formerly serviced and/or supervised by [the] individual Defendants has left [Plaintiff] with seriously depleted and/or no hard copy customer account files for [Plaintiff's] customers formerly serviced or supervised by them for [Plaintiff]" and that "[i]n addition, the laptop computer formerly used by Defendant Arneson was turned in to [Plaintiff], at the time of his resignation, with all of the memory and data entirely erased and removed, leaving [Plaintiff] with no laptop computer data or memory from which to retrieve current account data or service current [Plaintiff] customers. This has caused [Plaintiff] to be put at a serious disadvantage, and suffer severe problems, embarrassment, and loss of reputation and standing with its customers as well as lost sale opportunities and loss of its competitive advantages and serious impairment of its ability to compete for the business of its own customers." Verified Complaint at ¶¶ 36, 38. However, as set forth in Defendants' Opposition and the declarations in support of their Opposition, all of Plaintiff's customer information is stored on a central web server which can be accessed using "On-Target," an Internet web application. *See, e.g.*, Decl. of D. Arneson at ¶ 22. Accordingly, the suggestion in Plaintiff's papers that Plaintiff's only source of information was in the form of either hard copies, or electronic copies stored on the hard drives of its employees' computers, is simply not true. In fact, in its Verified Complaint, Plaintiff admits that the "On Target" program contains detailed information concerning the approximately 850 customers of the IKON San Luis Obispo branch office and although that "information is also maintained in a series of hard-copy files . . . it is not an quickly or as easily accessed as on the computer." Verified Complaint at ¶¶ 57-60.

In contrast, in support of their Opposition Defendants submit the declarations of Defendant David Arneson, a former Branch Sales Manager for Plaintiff who is now employed by Defendant Ray Morgan Company, and Jim Scarff, President of Defendant Ray Morgan Company, which contain evidence that directly contradicts Plaintiff's allegations. In his declaration, Defendant Arneson unequivocally states that "[u]pon leaving my employment with [Plaintiff], I did not take any electronically stored data or hard copy, customer list, trade secrets or confidential information belonging to [Plaintiff]" and that he specifically informed all other co-employee defendants not to take any customer list, trade secrets or confidential information as well. Decl. of D. Arneson at ¶ 18. Defendant Arneson further states that "[u]pon being employed with Ray Morgan Company we were not asked to use, take or provide any electronically stored data hard copy, customer list trade secrets or confidential information belonging to [Plaintiff]. We do not use, and have not used, any electronically stored data or hard copy, customer list, trade secrets or confidential information belonging to [Plaintiff] in our employment with Ray Morgan Company." Id. at ¶¶ 20-21. In his declaration, Mr. Scarff explains that Ray Morgan Company compiled its list of potential customers "from information readily available to it from use of the local Yellow Pages or business directories" and then "requested its sales representatives make sales calls to solicit the sale and leases of its Canon product line." Decl. of J. Scarff at ¶ 8. Consistent with the statements made by Defendant Arneson in his declaration, Mr. Scarff confirms that "[a]t no time has Ray Morgan Company requested that [the individual Defendants] provide Ray Morgan Company with any electronically stored data, customer list, trade secrets or confidential information belonging to [Plaintiff]. At no time has Ray Morgan Company come into possession of or used any electronically stored data, customer list, trade secrets or confidential information belonging to [Plaintiff]." Id. at ¶¶ 8-9.

As a result of the foregoing, the Court finds that Plaintiff has failed to meet its burden of demonstrating either probable success on the merits and the possibility of irreparable injury, or the existence of serious questions on the merits and that the balance of hardships weighs heavily in its favor.

Accordingly, the Court **DENIES** Plaintiff's *ex parte* Application for a Temporary Restraining Order. The Court will issue Plaintiff's requested Order to Show Cause re Issuance of a Preliminary Injunction ("OSC") and sets a hearing on the OSC for March 22, 2004 at 1:30 p.m. Plaintiff shall personally serve the OSC on Defendants no later than February 17, 2004, and shall file a proof of service no later than February 20, 2004. Plaintiff shall file and personally serve all papers in support of the OSC on or before March 1, 2004. Defendants shall file and personally serve their opposition to the OSC no later than March 8, 2004. Plaintiff shall file and personally serve a reply brief no later than March 15, 2004. Courtesy copies of the parties' papers shall be deposited in the drop box located in the entrance way to Chambers on the date due.

The parties shall direct any and all requests for expedited discovery to the Magistrate Judge.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.